## McClintock *v.* Matlack, Appellant.

*Sale—Contract—Heating apparatus—Warranty.*

1. In an action on a promissory note, where it appears that the note was given in part payment for a heating apparatus upon a warranty, that it would heat a house in accordance with a contract, binding instructions for the plaintiff are proper where the defendant seeks to set off damages alleged to have been sustained by a breach of the warranty, but offers no evidence to sustain the measure of damages requisite in such a case.

2. In such a case where it appears that the defendants kept the apparatus and used it for four years in heating their house, without having altered it in any respect, they are bound at least to show the value of the apparatus they received, and the value that it would have had if it had complied with the warranty alleged to have been broken.

Submitted Oct. 23, 1912. Appeal, No. 88, Oct. T., 1912, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1909, No. 4,045, on verdict for plaintiff in case of A. McClintock v. Martha G. Matlack and Joshua Matlack. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit on a promissory note.  Before AUDENRIED, J.

At the trial the court gave binding instructions for plaintiff, and the jury returned a verdict for plaintiff for $46.00.

On a rule for a new trial AUDENRIED, J., filed the following opinion:

The claim of the plaintiff is based upon a note made by the defendants October 6, 1909, for $40.00, payable to his order three months after that date.

The defense set up by the pleadings is a counterclaim for damages sustained by the defendants through the breach of the plaintiff's guaranty of a heating apparatus, whose price is partly represented by the note in suit.

At the trial it appeared by the evidence that in the fall of 1907, in pursuance of a written contract between them, a heating apparatus was installed by the plaintiff in the defendant's residence at Mt. Holly; that by the contract referred to the plaintiff guaranteed that this apparatus would perform certain work in the heating of the house; that it was not provided with the radiator surface called for by the contract; that it did not do the work that it was guaranteed to perform; and that as constructed it did not have the capacity to do that work.  It also appeared that in spite of its defects the defendants had kept the apparatus installed by the plaintiff under his contract and had for four years made use of it in heating their house, without having altered it in any respect.

For the purpose of showing the damages occasioned by the breach of the plaintiff's guaranty of this heater, counsel for the defense asked the following questions of Mr. Stead, a witness engaged in the plumbing and heating business at Mt. Holly:

(a) "By the difference in the radiation from your examination and what the contract called for, how much would the contractor save?"

(b) "What would be the difference in the cost?"

(c) "What would it cost for the difference in placing and replacing this radiation?"

(d) "What would it cost to put that heating apparatus in proper shape by the introduction of larger pipe for the purpose of carrying the radiation?"

To each of these questions an objection was made on behalf of the plaintiff, and in every instance the objection was sustained.

The trial judge directed a verdict for the plaintiff for the amount of the defendants' note with interest, on the ground that, while the making of the note was not denied, no such defense as that set up by the pleadings had been made out, the defendants having failed to show the damages arising through the breach of the warranty of the capacity of the heater delivered to them by the plaintiff.

The only questions raised by the defendant's motion for a new trial that require discussion are, first, were the objections to the four questions above referred to properly sustained, and, second, was there any legal evidence before the jury as to the damages sustained by the defendants through the plaintiff's breach of warranty.

Where the buyer retains the article sold, the measure of the damages recoverable for a breach of warranty of quality is the difference between the actual value of the article at the time of the sale, and what its value would have been if it had been as warranted: Weed v. Weinberger, 12 Pa. Superior Ct. 12. This is the general rule, and, in Pennsylvania, it has been applied to the case of machinery: Himes v. Kiehl, 154 Pa. 190; Shoe v. Maerky, 35 Pa. Superior Ct. 270; Miller Lock Co. v. Diehl Mfg. Co., 37 Pa. Superior Ct. 585. If it be true, as seems to have been held by the courts of several other states, that where the warranty relates to a machine the measure of the buyer's damages for its breach may sometimes be the cost or expense of changing or repairing the machine, so as to make it conform to the warranty, it must be made to appear in such a case that it is impossible to resort to

the ordinary method of calculating the damages or that the application of the rule would lead to unsatisfactory results.

The evidence in this case failed to show the impossibility of establishing, as of the fall of the year 1907, either the actual value of the heating apparatus that the plaintiff delivered to the defendants or its value had it been as warranted; nor was there anything to indicate that the difference between these values would not fairly represent the real loss that the defendants sustained by reason of the breach of the plaintiff's warranty. There is no reason of which, in the absence of such proof, the court is aware why the damages for the breach of the warranty of a heating apparatus should be measured by a rule differing from that applied to the case of a gas engine in Shoe v. Maerky, 35 Pa. Superior Ct. 270, to the case of a steam engine in Himes v. Kiehl, 154 Pa. 190, and to the case of an electric generator in Miller Lock Co. v. Diehl Mfg. Co., 37 Pa. Superior Ct. 585. It follows, therefore, that in order to sustain the defense on which they had chosen to rely, the makers of the note in suit should have proved the value of the apparatus that they received from the plaintiff, and the value that it would have had if it had complied with the warranty alleged to have been broken.

It would have helped in no degree toward the jury's understanding of these points had counsel for the defendants been permitted to show how much the plaintiff would save by providing for less radiating surface in the heating apparatus that he installed than was called for by his contract. The savings of the contractor who scamps his job do not necessarily represent the difference between the value of what he has agreed to furnish and the value of what he actually supplies. Moreover, this question did not relate to the date when the heater was installed, but referred to the time of the trial or a later day. The objection to question (a) above set forth was, therefore, properly sustained.

For the same reasons question (b) was objectionable and was rightly disallowed.

Taken literally, question (c) was unintelligible. All that is certain about it is that counsel, when he propounded it, had in mind the cost of radiators at a time either contemporaneous with the trial or subsequent thereto. If the breach of the warranty of their heater damnified the defendants, the damages should be calculated as of the date of the breach, and even if their correct measure was the cost of altering or changing the heater to comply with the plaintiff's warranty, the expense involved in so doing more than four years after the heater was installed was irrelevant.

The fourth question (d) also related to the wrong point of time and was objectionable on that ground as well as for the reason that it had no relation to the pertinent facts under the rule applicable to the measurement of the defendants' damages.

When the defense was closed nothing had been elicited from the witnesses on the subject of the defendants' counterclaim except Stead's answer, "I should say $50.00," in reply to the question, "I want to know the difference in the cost of the pipe. You said the pipe was smaller than the pipe required to produce radiation sufficient to have the temperature of the heat required in this room. What would it cost for pipe to replace the pipe that is too small"—"the difference between the cost of the pipe at the time when the pipe should go in and at that particular price?" What counsel meant or the witness understood by this question, it is difficult to say. It is manifest, however, that his reply was merely a random conjecture. Mr. Stead, in fact, admitted as much. Be this, however, as it may, his answer, whatever it meant, cannot be regarded as referring to the date of the breach of the warranty or as bearing either on the question of what the heater would have been worth had it complied with the plaintiff's warranty or on its value as actually installed.

There being, therefore, no evidence whatever to support the counterclaim, there was nothing for the jury to determine except the amount of the interest on the note. That question was left to them. The direction to find in favor of the plaintiff for the amount of the note with interest was entirely correct. It was unnecessary to give further instructions. As the case had been presented, the defendants' requests for instructions were without relevancy. A new trial is refused.

*Error assigned* was in giving binding instructions for plaintiffs.

*Joshua Matlack*, for appellants.

*John Weaver*, for appellee.

OPINION BY MORRISON, J., December 9, 1912:

This action of assumpsit was brought to recover the amount of a promissory note given by the defendants to the plaintiff in part payment for a heating apparatus installed by the plaintiff in the defendant's dwelling house upon a warranty that it would heat the house in accordance with the contract and the plaintiff's representations.

The execution and delivery of the note was admitted and the defendants sought to set off against it damages alleged to have been sustained by a breach of the warranty. The defendants offered no evidence to sustain the measure of damages established in such cases by the decisions of our Supreme Court and of this court, and the learned trial judge gave a binding instruction to the jury to find in favor of the plaintiff for the amount of the note, with interest, and the jury so found. The defendants' learned counsel moved for a new trial, which was refused, and judgment having been entered on the verdict, defendants appealed.

In our opinion the court in disposing of the motion for a new trial gave sound reasons and cited ample authorities

sustaining the action of the trial judge in giving a binding instruction in favor of the plaintiff. We do not consider it profitable to attempt to add anything to what has been so well said in the opinion refusing a new trial. All of the judges who sat at the argument were convinced that the case was correctly ruled by the learned trial judge.

The assignments of error are all overruled and the judgment is affirmed.