# Pyott *v.* Baltz, Appellant.

*Sales—Executed sales—Warranty—Evidence.*

1. There is no implied warranty in executed sales, except that of title, nor is there any in cases where the sale is made upon inspection of a buyer.

.2. Although to constitute a warranty no particular form of words is required, the naked averment of a fact without more, is not a warranty. In connection with other circumstances it certainly may be taken into consideration, but the jury must be satisfied from the whole that the vendor actually, and not constructively, consented to be bound for the truth of his representation. Should he have used expressions partly

importing a willingness to be thus bound, it would furnish a reason to infer that he had intentionally induced the vendee to treat on that basis; but a naked affirmation is not to be dealt with as a warranty, merely because the vendee has gratuitously relied on it.

3. In an action to recover the price of cows sold by the plaintiff to the defendant, it appeared that the sale was made at public auction. Immediately prior to the sale defendant examined the cows personally and by his veterinarian. The latter asked the plaintiff whether he would submit the cows to the tuberculin test, which the plaintiff refused. There was evidence that the plaintiff stated that he intended to sell the cows as being sound cows, and that he had never had any suspicion of their having tuberculosis. After the sale the defendant had the cows examined by tuberculin test, and some of them were found to be affected with tuberculosis. At the trial the court submitted the question of warranty to the jury. *Held,* that a verdict and judgment in favor of plaintiff for the full amount of his claim should be sustained.

Argued Nov. 19, 1908. Appeal, No. 193, Oct. T., 1908, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1907, No. 53, on verdict for plaintiff in case of Joseph R. Pyott v. William S. Baltz. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on an unpaid check. Before BROOMALL, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $347.87. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Edward H. Hall,* with him *C. Wilfred Conrad* and *John D. Baltz,* for appellant.—The law of Pennsylvania is well settled that there is an implied warranty of kind in every sale of chattels: Borrekins v. Bevan, 3 Rawle, 23; Wilson v. Belles, 22 Pa. Superior Ct. 477; Ulrich v. Stohrer, 12 Phila. 199; Cunningham v. Welsh, 1 W. N. C. 315; Holt v. Pie, 120 Pa. 425; Holloway v. Jacoby, 120 Pa. 583; Groetzinger v. Kann, 165 Pa. 578; Pratt v. Paules, 4 Atl. Repr. 751; Joseph v. Richardson, 2 Pa. Superior Ct. 208; Smith v. Justice, 13 Wis. 600; Savings

Bank v. Fraze, 9 Ind. App. 161 (36 N. E. Repr. 378); Herman
v. Brinker, 17 Pa. Superior Ct. 177; Burch v. Spencer, 15 Hun
(N. Y.), 504; Snowden v. Waterman, 31 S. E. Repr. 110.

There was evidence of an express warranty of the cows
which should have been submitted to the jury: Mitchell v.
Zimmerman, 109 Pa. 183.

*George T. Butler*, with him *John J. Gheen*, for appellee.—
The court properly submitted the question of an express war-
ranty: Herman v. Brinker, 17 Pa. Superior Ct. 177.

OPINION BY ORLADY, J., February 26, 1909:

This action of assumpsit is brought to recover from the de-
fendant the amount of an unpaid check which was given under
the following circumstances: By handbill and newspaper, the
plaintiff advertised a public sale of a herd of cows on Novem-
ber 4, 1907. On October 31, the defendant sent a veterinarian
to examine the herd, which was done in the presence of the
plaintiff. The defendant appeared on the day of sale, and had
a conversation with the plaintiff in regard to the cattle. He
testified as follows: "Q. What did you say to him or he to you
about the cows? A. I asked him if he had raised these cows
and knew all about them. He said, Yes, with a few exceptions.
I asked him if they were sound and all right, and he said, Yes,
as far as I know. Then I repeated the question: Will you sell
them to be sound and all right? And he answered, Yes." The
cows were put up at sale, and as each cow was put up, the auc-
tioneer asked Mr. Pyott as to the cow, and he made the state-
ment, "This cow is all right," and then made some other state-
ment as to her condition. I understood these cows were extra
fine, and I had been led to believe they were all right; they were
guaranteed to be sound and all right in every way, and owing
to that fact, I supposed I was getting cows of that kind. There
was no question about it. "Q. What do you mean by 'being
led to believe the cows were all right?' A. I was relying on the
assurance Mr. Pyott made and in regard to other statements.
He told Dr. Bartholomew—he made some of the statements to
him." The veterinarian testified that when he inspected the

herd, he asked the plaintiff if he would submit the cows to a private tuberculin test, at the expense of a prospective buyer, to which the plaintiff replied, "No, I had these cows examined two years ago, and they are all right." "I says, Do you mean examined with tuberculin? He says, No, they were examined by Dr. Conrad, by direction of the board of health, which issued an order that there was not any milk to be shipped into the city until a certificate of a veterinarian accompanied the shipment. He also said he would not have tuberculin put in his cows. I saw he had a prejudice against certain things, and I asked him if he ever had any cows that went off in condition that he had to sell on that account. He said, No. Never had any suspicion of having any tuberculosis? He said, No. Well then I says, You sell these cows as being sound cows? He says, That is the way I intend to sell them."

The auctioneer corroborated the statement made as they were offered for sale, and added, "The way we guarantee cows, is that she is quiet, and will milk out of all her teats, and not suck themselves. I never heard tell of a guarantee at a public sale of soundness. We guarantee them to be straight and all right." Other witnesses testified to the same facts in substance. The plaintiff denied that he gave any warranty as to the health of any particular cow. The defendant purchased fourteen cows at the price of $1,141, in payment of which he gave his check for $336, being the check in suit and a promissory note for the balance of the purchase money. After removing the cows to his farm they were submitted to a tuberculin test by Dr. Bartholomew and five of them were found to be affected with tuberculosis. The plaintiff was at once notified, the payment of the check was stopped by the defendant who offered to return the cows to the plaintiff. This was refused, and suit was brought to recover.

The affidavit of defense alleges that the cows were publicly guaranteed and warranted to be all high grade, sound and all right, and free from disease or other infirmities, and the defendant relying on these statements and guarantees purchased said cows. On the trial the proof did not measure up to this statement of the fact, and the contention was then urged, that the

plaintiff had made an implied warranty instead of a specific one, under the testimony as above quoted. The case was submitted to the jury, which returned a verdict in favor of the plaintiff for his full claim.

The defendant submitted the following point: If the jury finds that the plaintiff warranted the cattle or any of them sound at the time of the sale, and that they or any of them at the time were affected with tuberculosis, there was a breach of warranty, and the plaintiff cannot recover for the cattle so affected, to which the trial judge answered, "That is affirmed. I have already said in your hearing, probably two or three times, that if this defendant bought a warranty with these cattle, as to their soundness, and that warranty is broken, and it is broken if you believe tuberculosis creates a condition of unsoundness, then the plaintiff is not entitled to recover," and in the body of the charge stated to the jury, "If the plaintiff represented at this sale that the cows were sound at that time, intending that such representation should be relied upon by the buyer, and the buyer purchased on the faith of the truth of such representation, this is warranty. . . . While it is important to know what a man intends as construing to some extent what he subsequently does, yet the all important thing is, What does he do? And, further, if you determine that these cows were put up at the sale, and sold as sound, then the verdict would be for the defendant; I say that, of course, subject to the thought that you would determine whether tuberculosis was a condition of unsoundness or not. If you do, then the warranty was broken, and as I repeat, if you determine that Mr. Pyott put up these cows and sold them as sound, subject to what I have said, your verdict would be for the defendant. If on the other hand you should not determine that these cows were put up and sold by Mr. Pyott as sound, then the verdict will be for the plaintiff.

Under the defendant's own statement of the case, he knew that the plaintiff had refused to submit his cows to the tuberculin test, and the representation as to their condition was a question under the evidence for the jury, which tribunal has resolved the question of fact against the defendant's contention. If the defendant felt that the tuberculin test was the only

certain method of ascertaining whether the cows were infected or not, he could have refrained from bidding, but evidently he did not make that a condition precedent to his being liable at a public sale, where the property had been physically inspected by a veterinarian and himself. There is no implied warranty in executed sales, except that of title; nor is there any in cases where the sale is made upon inspection by the buyer. In executory sales the seller warrants that the article shall be of the kind ordered and merchantable in quality. This is the rule laid down in Borrekins v. Bevan, 3 Rawle, 23, and followed through a long line of cases down to Selser v. Roberts, 105 Pa. 242. Whether there was an express warranty was purely a question of fact, and that has been disposed of by the jury. The general doctrine of Pennsylvania cases is that, though to constitute a warranty no particular form of words is required, the naked averment of a fact without more, is not a warranty. In connection with other circumstances it certainly may be taken into consideration, but the jury must be satisfied from the whole that the vendor actually, and not constructively, consented to be bound for the truth of his representation. Should he have used expressions partly importing a willingness to be thus bound, it would furnish a reason to infer that he had intentionally induced the vendee to treat on that basis; but a naked affirmation is not to be dealt with as a warranty, merely because the vendee has gratuitously relied on it: Herman v. Brinker, 17 Pa. Superior Ct. 177.

The plaintiff has certainly no cause to complain of the submission of the question of the warranty to the jury, nor can we see that he has any reason to complain of the manner in which it was submitted.

The evidence offered to the court, in support of his motion for a new trial, was properly disposed of in the court below; no reason was given why it might not have been produced on the trial of the case, and it did not measure up to the requirements of the after-discovered evidence, to justify the court in referring the case another time to a jury.

The assignments of error are overruled, and the judgment is affirmed.